IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| ALANA CHIEFSTICK; LEONA COLEGROVE, as Guardian ad Litem for S.C.J., K.C., and L.R.C., minors; MICHAEL B. SMITH, Personal Representative of the Estate of STONECHILD CHIEFSTICK, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF POULSBO, a political subdivision of the State of Washington; CRAIG KELLER, in his personal capacity; DAN SCHOONMAKER, in his personal capacity; TROY GROSSMAN, in his personal capacity,<br><br>Defendants. | NO.<br><br>COMPLAINT<br><br>JURY DEMANDED |

COMES NOW the above-named Plaintiffs, by and through attorneys Gabriel S. Galanda, Ryan D. Dreveskracht, of Galanda Broadman, PLLC, who allege upon personal knowledge as to themselves and their own actions and upon information and belief upon all other matters, as follows:

**I.     PARTIES**

1. Defendant CITY OF POULSBO is a political subdivision of the State of Washington. City of Poulsbo has various departments, including but not limited to the Poulsbo

COMPLAINT - 1

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Seattle, WA 98115
(206) 557-7509

Police Department ("PPD"), which is responsible for providing law enforcement services within City of Poulsbo.

2. Defendant CRAIG KELLER is a PPD officer who, at all times relevant hereto, was acting within the scope of his employment, and under color of law. Defendant KELLER shot and killed STONECHILD CHIEFSTICK, an enrolled citizen of the Chippewa Cree Tribe of Montana. STONECHILD CHIEFSTICK had longstanding kinship ties to the Suquamish People.

3. Defendant DAN SCHOONMAKER is the former Chief of the PPD, who, at all times relevant hereto, was acting under color of law. He was responsible for the supervisory decisions and policies as they relate to Defendant Keller. Defendant Schoonmaker's acts and omissions were, at all times alleged, affirmatively linked to the behavior of Defendant Keller, in the sense that he required, encouraged, condoned, and/or acquiesced in his acts, omissions, and established practices.

4. Defendant TROY GROSSMAN is the former Deputy Chief of the PPD. At all times relevant hereto, he was acting within the scope of his employment, and under color of law. He was responsible for the supervisory decisions and policies as they relate to Defendant Keller. Defendant Grossman's acts and omissions were, at all times alleged, affirmatively linked to the behavior of Defendant Keller, in the sense that he required, encouraged, condoned, and/or acquiesced in his acts, omissions, and established practices.

5. Plaintiff ALANA CHIEFSTICK is the decedent's daughter. She brings claims in her personal capacity for the loss of her right to familial association with her father as guaranteed by the Fourteenth Amendment.

6. Plaintiff LEONA COLEGROVE is the Guardian ad Litem for S.C.J., K.C., and L.R.C., STONECHILD CHIEFSTICK's minor children. These minors bring claims in their personal capacities for the loss of their right to familial association with their father as guaranteed by the Fourteenth Amendment.

COMPLAINT - 2

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Seattle, WA 98115
(206) 557-7509

7. Plaintiff MICHAEL B. SMITH is the Personal Representative of the Estate of STONECHILD CHIEFSTICK. Plaintiff SMITH brings all claims available to the Estate of STONECHILD CHIEFSTICK and all beneficiaries under federal and state law.

## II.   JURISDICTION AND VENUE

8. This action arises under Washington State's wrongful death law and the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Western District of Washington pursuant to 28 U.S.C.§ 1391(b)(1) and (b)(2). The City of Poulsbo is located in this District, and the events and omissions giving rise to the claims in this action occurred in this District.

10. An RCW 4.96.020 Tort Claim was properly and timely filed with the City of Poulsbo on June 16, 2020. Over sixty calendar days have elapsed since the claim was presented to the City. All substantive and procedural requirements of RCW 4.96.020 have been met.

## III.   FACTS

### A.   THE WRONGFUL DEATH OF STONECHILD CHIEFSTICK

11. On July 3, 2019, as was tradition for him and his family, Stonechild Chiefstick attended the City of Poulsbo's Independence Day celebration at the Muriel Iverson Williams Waterfront Park with thousands of his neighbors.

12. At some point in the late afternoon, based on a tip from Poulsbo's mayor, Defendant Schoonmaker and three other officers responded to a report of a man in a backwards black baseball hat that was acting belligerent.

13. Defendant Schoonmaker and his colleagues approached Stonechild and told him that they had received a report about him. However, recognizing Stonechild posed no threat, one of the

officers gave Stonechild a fist-bump and told him to enjoy the festivities. Stonechild, a father of five, responded, "I'm trying."

14.   As dusk sank in, at 9:22 p.m., a civilian complaint was made to PPD officer Stan Gil regarding a large man possessing a screwdriver.

15.   Some of the responding officers were carrying only lethal weapons and did not possess a non-lethal weapon such as a Taser.

16.   Amongst the responding officers there was no plan, tactic, strategy, or communication on how to approach the man.

17.   Despite no indication that Stonechild posed an imminent risk of harm to anyone, and without issuing a clear command, Defendant Keller attempted to grab Stonechild from behind. Stonechild attempted to de-escalate the situation, telling officers to "chill out." He freed himself from Defendant Keller's grasp and, according to witnesses, "started walking away" and "lumbering over the people" at the festival "trying to quickly get away from the officer."

18.   Defendant Keller's body camera then allegedly "fell off."

19.   As Stonechild was retreating, the involved officers yelled "Hey!," "Back the fuck up," "Screwdriver," and "Get on the fucking ground" simultaneously.

20.   Stonechild then tripped and fell onto a concrete cart path.

21.   As he hit the ground, one witness "saw whatever he had go flying." Another saw that "a screwdriver of some sort went flying through the air." In other words, Stonechild was completely unarmed at this point.

22.   After landing on the path, Stonechild, according to witnesses, "went to do another hop, like he was trying to get away from the officer or get through the crowd."

23.   Officer Keller then fired two shots at Stonechild, hitting him once in the head and once in the torso.

24. Defendant Schoonmaker has since said that he knows of only one other instance during which a PPD officer's body camera has fallen off. On that instance too, in 2018, the wearer was Defendant Keller.

25. Defendant Keller did not pursue a career in law enforcement until his 40s and was thus inexperienced and undertrained at the time of the relevant events.

26. Defendant Keller harbored bias against Stonechild, having previously searched Stonechild's name in a police database.

27. Within thirteen seconds of initiating the encounter, and in a crowd full of several hundred citizens, including many children and Suquamish tribal members, Defendant Keller discharged his firearm twice.

28. A witness described being "surprised at how quickly it escalated." Others said, "the amount of time between the police officers saying 'stop' and the gun being fired could not have been more than 1.5 to 2 seconds"; Stonechild was shot "in the blink of an eye"; and it "felt like watch[ing] a murder."

29. After firing the shots, perhaps reflecting on his deliberately indifferent use of lethal force, Keller shouted an expletive and placed his hands on his head. He paced in circles and gasped for air.

30. Though Stonechild was clearly severely wounded, no emergency aid was rendered for minutes after Defendant Keller fired the two shots. In fact, witnesses reported that Stonechild was immediately handcuffed, despite the fact that he was clearly incapacitated.

31. Stonechild was pronounced dead at the scene at 10:04 p.m. The coroner classified his death as a homicide.

32. At no point was Stonechild asked to leave the celebration.

33. At no point did Stonechild possess a deadly weapon, let alone point one at any officers or civilians.

34. At no point did Stonechild threaten to harm or kill any officers or civilians.

B. **POULSBO POLICE DEPARTMENT POLICIES, CUSTOMS, AND ESTABLISHED PRACTICES**

35. PPD has a policy, custom, and established practice of condoning and encouraging the type of shoot-first, ask-questions-later mentality deployed by Keller.

36. PPD also has a policy, custom, and established practice of failing to supervise and train its officers to use deadly force as a last resort, as required by generally accepted police practices.

37. In addition, PPD also has a policy, custom, and established practice of racial discrimination and/or bias as a result of inadequate training that amplified Keller's perception of threat when there was none—or, at the very least, none sufficient to justify the use of deadly force.

38. Defendant Schoonmaker, for instance, implemented a policy and custom at PPD of not adequately reviewing officers uses of force and other metrics to determine if there are any patterns that need correcting, in violation of the PPD's written policy. Had this analysis been completed, it would have come to light that Defendant Keller had 20% of the uses of force for the department including at least one violation and another instance in which he did not turn his camera on. Defendant Keller also had 20% of the arrests of the entire department. This is a textbook example of an unconstitutional policy and custom "designed to give officials the motivation to 'take refuge' in the zone between ignorance and actual knowledge." *Mayoral v. Sheahan*, 245 F.3d 934, 940 (7th Cir. 2001).

39. Each of these policies, customs, and established practices, described above and in other respects as well, were a direct, proximate cause of Stonechild's wrongful death.

COMPLAINT - 6

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Seattle, WA 98115
(206) 557-7509

## IV. CLAIMS

### A. FIRST CAUSE OF ACTION: NEGLIGENCE

40. All Defendants owed a duty to Plaintiffs to act as reasonable prudent persons.

41. "This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance"—a duty that was breached by Defendants. *Beltran-Serrano v. City of Tacoma*, 193 Wash. 2d 537, 550, 442 P.3d 608, 614 (2019)

42. At all times relevant to this case, all individually named Defendants were acting within the course and scope of their employment. The City of Poulsbo is liable for the negligence of the individually named Defendants.

43. Defendants City of Poulsbo, Schoonmaker and Grossman had a duty of care to properly train officers to handle arrests without using excessive force and brutality and, as officers, to carry out arrests without using excessive force and brutality.

44. By virtue of the facts set forth above, Defendants, as law enforcement agents of the City of Poulsbo, breached their duty to act as reasonable law enforcement officers by failing, neglecting and/or refusing to properly and fully discharge their responsibilities.

45. Defendants City of Poulsbo, Schoonmaker, and Grossman were responsible for training and supervising the individually named Defendants and possessed a duty to adequately train and supervise those Defendants. Defendants acted negligently by failing to adequately and properly train and supervise the individually named Defendants with respect to the discharge of their responsibilities and duties.

46. As a proximate cause of Defendants' breach of their duty to act as reasonable law enforcement officers, and to train and supervise the individually named Defendants, Plaintiffs have suffered harm, entitling Plaintiffs to damages in an amount to be proven at trial, including, but not

limited to, loss of income, loss of liberty, shock, extreme emotional distress, anxiety, and humiliation, all of which have resulted in general damages for pain and suffering in an amount to be proven at trial.

### B. SECOND CAUSE OF ACTION: ASSAULT AND BATTERY

47. Defendant Keller intentionally, and without consent, opened fire on Stonechild as he ran away, attempting to injure Stonechild and cause bodily harm.

48. Defendant Keller fired two shots, at Stonechild, causing him bodily harm and death.

49. As a trained police officer, Defendant Keller knew his gun was a deadly weapon and could not have fired shots without the intent to cause harm to Stonechild.

50. Because the City of Poulsbo could have prevented this battery by the exercise of due care by government employees, the City of Poulsbo is liable for its own negligence that resulted in the assault and battery of Stonechild.

51. As a proximate result of the acts alleged herein, Stonechild, his children, and his estate suffered harm at the hands of Defendants, entitling Plaintiffs to damages in an amount to be proven at trial.

### C. THIRD CAUSE OF ACTION: 42 U.S.C. § 1983 - EXCESSIVE FORCE AND BRUTALITY

52. By virtue of the facts set forth above, all Defendants are liable for the deprivation of Stonechild's civil rights guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from the use of excessive force and physical brutality.

53. By virtue of the facts set above, Defendant City of Poulsbo is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in that a policy or custom can be inferred from a showing of ratification of an unconstitutional act and PPD's policies, customs, and established practices.

**D.    FOURTH CAUSE OF ACTION: 42 U.S.C. § 1983, DEPRIVATION OF FAMILIAL RELATIONSHIP**

54.    By virtue of the facts set forth above, all Defendants are liable for the deprivation of civil rights of the non-estate Plaintiffs, in their individual capacities, guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, to be free from the deprivation of their liberty interest in a familial relationship with Stonechild without due process of the law.

### V.    JURY DEMAND

55.    Plaintiffs hereby demand a trial by jury.

### VI.    RELIEF REQUESTED

56.    Damages have been suffered by Plaintiffs and to the extent any state law limitations on such damages are purposed to exist, they are inconsistent with the compensatory, remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

57.    WHEREFORE, Plaintiffs request a judgment against all Defendants:

(a)    Fashioning an appropriate remedy and awarding economic and noneconomic damages, including damages for pain, suffering, terror, loss of consortium, and loss of familial relations, and loss of society and companionship pursuant to 42 U.S.C. §§ 1983 and 1988, in an amount to be determined at trial;

(b)    Punitive damages;

(c)    Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as otherwise available under the law;

(d)    Declaring Defendants jointly and severally liable;

(e)    Awarding any and all applicable interest on the judgment; and

(f)    Awarding such other and further relief as the Court deems just and proper.

COMPLAINT - 9

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Seattle, WA 98115
(206) 557-7509

1 | Respectfully submitted this 1st day of July 2021.

2 | GALANDA BROADMAN, PLLC

3 | s/Gabriel S. Galanda

4 | Gabriel S. Galanda, WSBA #30331
 s/Ryan D. Dreveskracht

5 | Ryan D. Dreveskracht, WSBA #42593
Attorneys for Plaintiffs
P.O. Box 15146 Seattle, WA 98115

6 | (206) 557-7509 Fax: (206) 299-7690
Email: ryan@galandabroadman.com

7 | Email: gabe@galandabroadman.com

COMPLAINT - 10

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Seattle, WA 98115
(206) 557-7509